All right, our final case for this morning is Mohammed Butt against Attorney General William Barr. Mr. Azoulay. Good morning, Your Honors, and may it please the Court, I'm Yehuda Azoulay on behalf of Mohammed Butt. I've got a tough mountain to climb because this Court has in the past ruled that MQM is a terrorist organization, and there have been plenty of that effect. We're arguing that in our circumstances, Mr. Butt is within the exceptions, and because he was, he is within the exceptions, his belonging to the organization and leaving it prior to their, call it terrorist activities, excuses him, particularly the judge, the BIA had ruled that he should have, that he's within this group, and they also found his testimony to be incredible. As to regard to the testimony first, I want to state that his testimony at all times was coherent and identical. The minor differences that both the immigration judge and the board found and relied on were exceptionally minor, and this Court has ruled in other cases that minor testimony happening 20 years after these acts are not unusual, given people's memories, given ideas and whatnot. So maybe you should focus, though, as you note, immigration judge had credibility problems. I'm looking at pages 15 and 16 of the judge's undertaking by MQMA. The Court finds respondent at the very least should have known that MQMA was engaged in terrorist activities and ticks off a bunch of things, his rank, what he was doing, his recruiting activities, they send him overseas, he raises money in New York and Chicago and so on, and the immigration just doesn't believe the fact, in fact, thinks that he's conceited that the press is reporting the violence of MQMA. He says, well, I don't credit it, but he knows that they're saying that this is there. So why isn't that enough to defeat your lack of knowledge argument? Well, the fact is that Mr. Butt, for his number of years being involved, was out of the country for many of those years in which the alleged actions took place that led to them being classified as terrorists. But he went back basically annually to Pakistan during the years he was living in Dubai. But when he did go back, Your Honor, if I may lead that, in part of that time he was in hiding, he was afraid of what might happen to him. He joined in 88, and when he joined in 1988, all he did, and I'm saying all he did, his particular activity was related to labor matters. He wanted to make sure that workers within that country were accorded status of individuals. Instead of the idea of thousands of people being mistreated at work, he wanted to organize them much as the AFL-CIO did in the early 1900s. He wanted to organize these people as employees. He wanted them to get a fair shake in what they did, and therefore he was not involved in anything. And when he did leave the country, and that's at that time, and I'm looking at the in 1984, his accusations, what happened was in the mid-1990s, you're correct, that he did go back to the country. But when he did return to the country, we would argue that because of his activities, as it turned out, because of his banking activities and others and the threats that he had forced him to ultimately leave, it was directed against him particularly, and all of his and that's towards the workers. Well, you know, another point the immigration judge makes is that his story really changes quite considerably from his, if I'm remembering, 2003 or 2004 or so, application to the 2011 one, 2004, right, the affidavit. So, your statements would require us to assign greater credibility to Mr. Butt than the judge was willing to. Well, if I recall correctly, this court has ruled that asylum applicants, generally, the focus that they have and what happens, he was represented previously by some outstanding attorneys. And I'm sure that they went through with him to make sure that everything that he did was coherent. And while I know that the judge did find that some of his testimony was not on par with his original application, his later application. Oh, flat out inconsistent, you know, building up his role, minimizing his role. I think that is what bothered the judge. Well, the fact is that individuals in this situation, finally, when they've got competent counsel, do at least come forward and advise him. And I want to relate on that, I believe, in reading through the decisions that when he did have that decision, his counsel was very, very competent. The second time around, I don't know what happened the first time around, but the second time around, exceptionally competent. And I would place a lot of weight on that particular counsel and the work that he did then. Well, if we were doing de novo review, maybe we could do that, but we're not, right? Seriously, I agree with you. But in this particular situation, because he was coherent in what he did originally, because of his labor activities and whatnot, that's what I want to focus on. And the fact is that looking at the history of the MQM, looking at how they developed and everything like that, originally they were an organization that arose because of student admissions to universities. All of their students were from Afghanistan. But we believe that he applies to the exception of the terrorist ban because we believe he did not know that he could not have known reasonably. And because he was so focused on what he was doing, that was particularly all he was concerned about. Everything else that happened in terms of the government and everything else, he was totally uninvolved in that. If I may, I want to reserve two minutes. But what I wanted to say was, yes, he worked, but because of his travels, I believe that because of his travels, he basically could not have known that he finally knew that something was up when he himself was threatened. That's when he finally left the country. He escaped. He was afraid for his life. But prior to that, I don't believe he knew. Thank you. Certainly. I'm not sure how you pronounce your name. You can tell me. Igo. Igo. Ms. Igo. Good morning. Alison Igo representing the respondent. May it please the court. Pardon me, sir. Did you have a grandfather who was a judge in the district court? I'm not sure. My grandfather died quite early, but he did have family, but we were not in touch with him. This guy lived quite a while, but he was a district court judge. Michael Igo. My father's father was not a judge. No. But he had other family, and we did not know them. Okay. So the answer is no. No. I'm just curious. Please don't take it off for a time. I certainly will not. Thank you very much. Igo, you may. This boils down to the burden that the questions, whether, and I think my counsel has conceded in terms of the material support issue, what is at issue here is whether Mr. Butt reasonably should have known of the activities of this organization. Can I ask you something that bothers me a little bit about these cases? Tier one, I get. Tier two, of course, is also fine. You get down to tier three, and the definition is extremely broad. So I wonder if every organization in the world that has ever engaged in some kind of violent activity, maybe the people in Hong Kong who've been demonstrating in the streets and there's been punches thrown and different activity, are they supposed to know that the United States, if it feels like it, might decide that they're not just a group of people who have engaged in some violence, but they're actually a terrorist organization? It was left open. The reason that that reasonably should have known, known or reasonably should have known, is exactly for that reason. Because if you are involved in You may know perfectly well that you're involved in the alpha organization. You attend meetings and you see people and so on, but do you have to know that the United States thinks that the alpha organization is a tier three terrorist organization, or is it enough that you know you're affiliated with the alpha or working with the alpha organization somehow, and it's just your tough luck if later on the United States decides that it's a tier three terrorist group? It's sufficient to know or that you should have reasonably have known that your group is engaged in certain types of activities, regardless of what the U.S. knows. Right, so the definition of the tier three group is very broad. And it's meant to be broad to take into account all different types of groups and all different types of violence and terrorism. I mean, it's intended to sweep up organizations of every sort that are engaged in terrorist activity, but it does give an out for people who might not have known and can show that they reasonably did have. I'm trying to figure out what they need to know, because I can't remember where in the briefs the definition is, but what I do remember is that by the time you get to tier three, it's just or otherwise engaged in violent acts. And I want to know whether we have designated every organization on the globe that sometimes engages in violent acts. It's a factual question about whether an organization constitutes a tier three. In this case, there was not a question about that. This is MQMA, which has engaged over a decade or more in not just violent acts, but bombings and killings, murder. And this court actually recognized it as a tier three organization, as my opposing counsel. MQMH, I think we had said, was a tier three. And I believe MQMA as well, because virtually they battled one another in Pakistan and engaged in exactly the same type of activity. So that really wasn't the question. Also, my counsel focuses very much on what his client did for the organization. That also really doesn't matter, because there are a multitude of cases that say, if you were involved in a terrorist organization, it doesn't matter if you brought food to old ladies. We have all sorts of cases about that. So his involvement in the labor wing of this organization qualifies him as engaging in material support of a terrorist organization. The only thing that was a question was whether he reasonably should have known. That is also a factual question. And he has to show to this court that any reasonable person would have been compelled to reach a different conclusion than the agency reached. And he not only hasn't done it, he cannot do it in this case. This was a... However, though, he does impose a clear and present danger to the safety of the United States. Right? We had this case sat dormant for, what, 12 years or so? Well, it didn't sit dormant. He asked for multiple extensions because he was trying to get a labor cert to allow him to work here. That was what originally happened. He only applied for asylum because the company that he came to work for went under and he was no longer eligible for a labor cert. So that's why. And as far as his present clear and danger, that's not what the statute addresses. The statute does address prior activity. And it's not to reward people who engaged in violent activity before, left the organization, come into the country and says, now I don't do it, so now I'm eligible. And the evidence in this case is overwhelming. He was involved in this organization for 10 years. He's an educated person. And as the court noted, he tried to walk back his involvement. But even if he was just involved at a local level, he admitted that he read the media reports. He also said that in 1994, he was arrested when as a representative of the organization, he was involved in this panel. He was arrested by the CIA, which was part of the police. And he was persecuted by the police because of his involvement in the organization. Any rational person would have thought, well, why are the police after me if I'm just part of this labor division of this organization? They would have asked that question. He reasonably should have known. This is a case of willful blindness, if that. But I believe that the evidence shows he did know. And as far as the adverse credibility, he also has to convince his court that any reasonable person would have been compelled to find him credible. There are overwhelming examples of, pardon me, I think the cold. You can get some water if you want. No, I think it's just the cold air is affecting my voice. His 2004 application bears no resemblance to his 2011 application. And whereas in his original application, where he talked about being the, I believe it was the secretary general of the labor division, he completely walks back his involvement in the organization when he testified, putting himself as a very, very minor person. If the court doesn't have any other questions, I would just say that there's substantial evidence, both supporting the adverse credibility determination in this case, as well as the material support. And I would ask that the court deny the petition. Thank you. All right. Thank you. Anything further, Mr. Azoulay? No, Your Honor. All right. Well, in that case, the court will take the case under advisement, and we will be in recess.